**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

DE'VON LE'EDWARD WALKER,

        Movant,

    v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 4:21-cv-61

(Case No.: 4:19-cr-127)

**O R D E R**

Movant De'von Le'edward Walker ("Walker") filed a Motion to Reduce Sentence. (Doc. 61.)[1]  The Court entered an order, pursuant to <u>Castro v. United States</u>, 540 U.S. 3756 (2003), informing Walker that he needed to clarify his Motion, or the Court would reconstrue it as a 28 U.S.C. § 2255 motion.  (Doc. 65.)  The Court offered him the alternatives of (1) having his motions reconstrued and ruled upon, as filed; (2) amending the motions to include any other alleged grounds for habeas relief; or (3) withdrawing them entirely.  (<u>Id.</u> at p. 3.)  Walker has since filed a Notice indicted that he wants his Motion ruled upon as filed but construed as a Motion made pursuant to 28 U.S.C. § 2255.  (Doc. 66.)  The Court has reviewed all the arguments Walker has raised in his various pleadings and finds them entirely without merit.  Walker's conviction and sentence is due to his own admitted abhorrent conduct not any fault of his counsel or the Court.

For the reasons set forth below, the Court **DENIES** Walker's request to set aside his conviction and sentence, (doc. 61), and **DENIES** as **MOOT** his Motion for Supersedeas Bond,

---

[1]  The pertinent record documents in this case are filed on the docket of Walker's criminal case, <u>United States v. Walker</u>, 4:19-cr-127 (S.D. Ga. Aug. 7, 2019), and many are not included in his civil docket.  Thus, for ease of reference and consistency, the Court cites to Walker's criminal docket in this Order.

(doc. 76).  Therefore, the Court **DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case.  Further, the Court **DENIES** Walker a Certificate of Appealability and *in forma pauperis* status on appeal.

## BACKGROUND

The Grand Jury in this District charged Walker with Interference with Interstate Commerce by Robbery, (Count One), Using and Carrying a Firearm During and in Relation to a Crime of Violence, (Count Two), and Possession of a Firearm by a Prohibited Person, (Count Three). (Doc. 1.)  The penalty certification notified Walker that he faced up to twenty years' imprisonment as to Count One, a consecutive sentence of imprisonment on Count Two of not less than five years if Walker used the firearm, not less than seven years if Walker brandished the firearm, or not less than ten years if Walker discharged the firearm, and not more than ten years' imprisonment on Count Three unless Walker was an armed career criminal in which case his potential sentence on Count Three increased to not less than fifteen years' imprisonment nor more than life.  (Doc. 2.)

Walker and his appointed counsel, Mr. Robert Hughes, were able to negotiate a Plea Agreement with the United States whereby Walker agreed to plead guilty to Count One of the Indictment, and the United States agreed to dismiss the remaining counts.  (Doc. 35.)  Through that agreement, Walker affirmed the accuracy of the following facts:

> [O]n or about December 14, 2018, in Chatham County, within the Southern District of Georgia, the Defendant did unlawfully obstruct, delay, and affect commerce by robbery, in that Defendant did unlawfully take and obtain property consisting of United States Currency from the person and in the presence of Automotive Repair on Wheels employee M.L., against the employee's will by means of actual and threatened force, violence and fear of injury, immediate and future, to the employee, and to property in the employee's custody and possession, that is. Defendant did enter the business, brandish and use a firearm, threaten M.L., and take money belonging to the business. Automotive Repair on Wheels, located at 5307 Montgomery Street, Savannah, GA, was a commercial business that sold items such as automobile tires and was a business engaged in interstate commerce and in an industry that affects interstate commerce.

(Id. at p. 2.)  On October 29, 2019, Walker appeared before the Court for a Rule 11 or change of plea hearing.  (Doc. 33.)  At that hearing, the Court engaged in an extensive plea colloquy with Walker that lasted approximately forty minutes.  (Id.)  After placing Walker under oath and questioning him at length, the Court found that Walker's decision to plead guilty to Count One was voluntarily, knowingly, and intelligently made, and Walker agreed with that assessment.

Following the Rule 11 hearing, the United States Probation Office prepared the Presentence Investigation Report (PSR).  (Docs. 36, 39.)  The PSR laid out Walker's offense conduct in detail and explained that Walker had approached Automotive Repair on Wheels on the night of December 14, 2018, with a t-shirt over his face and brandishing a firearm.  (Doc. 39, ¶¶ 4—5.) The PSR explained that Marc Livingston went into the garage's business office and retrieved a bank bag, which fell to the floor when he tried to hand it to Walker.  (Id.)  Walker then shot Livingston in the right shoulder, and a physical altercation ensued. During the struggle, Livingston removed the t-shirt from Walker's head and eventually gained control of the gun.  (Id.)  Walker fled the garage with $130 in cash.  (Id.)  The PSR described significant evidence against Walker including the fact the robbery was captured by the store's surveillance video and that Walker's federal probation officer, state probation officer, and family identified him as the perpetrator.  (Id. at ¶ 6.)  Moreover, Walker's DNA was found on the gun recovered from the scene of the robbery. (Id. at ¶ 7.)

The PSR also described Walker's criminal history.  (Id. at ¶¶ 25—36.)  Walker's criminal-history category of VI was based on seven convictions including two prior state convictions for carrying a concealed weapon.  (Id.)  Moreover, in May 2016, this Court sentenced Walker to thirty months' imprisonment following his conviction for conspiracy to counterfeit U.S. currency.  (Id.

at ¶ 33.)  Walker committed the robbery underlying this case less than four months after being released from federal custody and while he was also on state probation.  (Id. at ¶ 35.)

The Probation Officer determined that, given Walker's admission of guilty to the Probation Officer including his statement of remorse, his offense level was reduced by three points for his acceptance of responsibility.  (Id. at ¶¶ 11, 12, 22, 23).  His advisory guidelines range was 130 months' to 162 months' imprisonment based upon Walker's Total Offense Level of 27 and Criminal History Category of VI.  (Id. at ¶ 60.)  Mr. Hughes filed a statement that Walker had no objections to the initial PSR.  (Doc. 38.)  However, after the final PSR was filed, Mr. Hughes filed a Sentencing Memorandum in which he objected to the Probation Officer's sentencing recommendation that Walker receive a sentence of 145 months' imprisonment based on the Probation Officer's belief that the victim suffered serious bodily injury.  (Doc. 40.)  Mr. Hughes argued for Mr. Walker to receive a sentence of 130 months' imprisonment.  (Id.)

At the sentencing hearing on March 5, 2020, the Court first made certain that the Government and Walker had reviewed the PSR and inquired as to whether they had any objections.  (Doc. 55, pp. 3—6.)  Neither side had any objections, and Mr. Walker specifically stated that he had gone over the PSR with Mr. Hughes and that he did not have any disagreement with anything in the PSR and that "everything is good."  (Id. at p. 6.)  The Court adopted the PSR as the findings of the Court and determined that the advisory Guidelines range was 130 to 162 months' imprisonment.  (Id. at p. 7.)  The Court then heard victim impact testimony from Marc Livingston, the employee of Automotive Repair on Wheels whom Walker shot during the robbery.  (Id. at p.8.)  Mr. Livingston described his personal background, including his service in the military for fourteen years, and his employment at two jobs, including Automotive Repair on Wheels, to provide for his family.  (Id. at pp. 10.)  He then testified to the events of December 14, 2018 and

4

the significant impact it has had on him and his family.  (Id.at pp. 9—15.)  The government then

played the surveillance video depicting Walker's robbing of the store including his shooting Mr.

Livingston and the resulting struggle between them.  (Id. at p. 16.)  The United States Court of

Appeals for the Eleventh Circuit described the video evidence as follows when ruling on Walker's

appeal:

> The video, which did not have sound, showed the following. At approximately 9:39
> p.m. on the night of the robbery, Livingston was cleaning when Walker came inside
> with his entire head covered, pointed a gun at Livingston, and knocked him to the
> ground. Livingston led Walker into an office, opened a file cabinet, and attempted
> to pass Walker a handful of bound bills and a bank bag, all while Walker had the
> gun pointed at his head or neck. The bag dropped to the floor, and Walker shot
> Livingston.  A struggle ensued, during which Livingston removed Walker's head
> covering and gained control of Walker.  With Livingston holding him from behind,
> Walker made several attempts to place a magazine into his firearm. At one point,
> Walker bent his arm behind him and pointed the gun at Livingston's abdomen.
> Almost simultaneously, Livingston brought Walker to the floor. They continued to
> struggle out of sight, and Livingston eventually led Walker out of the shop and
> turned him loose.

(Doc. 58, p. 5.)

> At the sentencing hearing, Mr. Livingston testified,

> I just don't understand why people feel the need to do these things. I work day in
> and day out. I'm going to school, using my G.I. Bill benefits, trying to make a better
> life for myself and my family.  Why can't anyone else do the same thing?  There
> are many other options out there.  Nobody is limited to anything. Why would
> someone have to do this?  And I just don't understand it.  And I hope that the Court
> will take into consideration not just the effect on the business or the effect on my
> physical body, but my mental injuries as well and take that in consideration in
> sentencing.

(Doc. 53, p. 17.)  Mr. Hughes then asked questions of Mr. Livingston regarding the extent of

injuries he suffered.  (Id. at pp. 18—19.)  The Court then asked Mr. Livingston whether, as it

appeared to the Court on the surveillance video, Walker was trying to place the magazine in the

gun during the struggle and after Washington had already shot Mr. Livingston, and Mr. Livingston

responded in the affirmative.  (Id. at p. 20.)  Mr. Livingston also confirmed that during the struggle,

Washington was attempting to point the gun at Mr. Livingston as if to shoot him again.  (<u>Id.</u> at p. 21.)  The Government then presented testimony from Mr. Robert Harris, the CEO of Automotive Repair on Wheels.  (<u>Id.</u> at p. 23.)  Mr. Harris testified to the impact the robbery has had on him, his company, and Mr. Livingston.  (<u>Id.</u> at pp. 23—28.)  He spoke glowingly of Mr. Livingston including describing him as someone who "just stands for what's right."  (<u>Id.</u> at p. 25.)  The AUSA offered argument regarding the appropriate sentence for Walker including an explanation that the plea agreement allowed Walker to avoid a mandatory consecutive sentence of at least ten years' imprisonment through the dismissal of Count 2.  (<u>Id.</u> at pp. 28—32.)  Ultimately, the Government requested a sentence at the high end of the advisory Guidelines range pursuant to the plea agreement.  (<u>Id.</u> at pp. 37—38.)  Mr. Hughes then offered argument in mitigation.  (<u>Id.</u> at p. 39.)  Walker then offered a lengthy allocution during which he apologized to Mr. Livingston but also attempted to deflect blame on his circumstances.  (<u>Id.</u> at pp. 42—46.)  The Court commended Mr. Hughes on the job that he had done representing Walker given the facts of Walker's case.  (<u>Id.</u> at p. 46.)  The Court sentenced Walker to 240 months' imprisonment.  (<u>Id.</u>)  The Court explained that it had varied above the advisory Guidelines sentencing range, and the Court explained at length why the various was necessary to achieve the statutory purposes of sentencing.  (<u>Id.</u> at pp. 47—50.)

Mr. Hughes appealed the Court's sentence to the United States Court of Appeals for the Eleventh Circuit.  (Doc. 48.)  The Eleventh Circuit rejected Walker's arguments that the Court committed procedural errors and that the sentence was substantively unreasonable and affirmed Walker's sentence.  (Doc. 58.)

**DISCUSSION**

The Court notes at the outset that a movant is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).  "The allegations must be factual and specific, not conclusory.  Conclusory allegations are simply not enough to warrant a hearing." Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) (citing San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011)).   For a movant proceeding *pro se*, the court will liberally construe the pleading, but he or she "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015).  "An evidentiary hearing may be necessary where the material facts are in dispute, but a [movant] is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics."  Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006) (citations omitted).  Stated another way, "if a habeas petition does not allege enough specific facts, that if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." Chavez, 647 F.3d at 1060 (citing Allen v. Sec'y Fla. Dep't of Corr., 611 F.3d 740, 763 (11th Cir. 2010))..

Further, because solemn representations at a plea hearing by a defendant, his attorney, and the prosecutor "carry a strong presumption of verity" and "constitute a formidable barrier in subsequent collateral proceedings," a movant's later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977) (citing Machibroda v. United States, 368 U.S. 487, 495–96 (1962), and Price v. Johnston, 334 U.S. 266, 286–87 (1948)).  "[I]f the Rule 11 plea–taking procedure is careful and

detailed, the defendant will not later be heard to contend that he swore falsely." United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986). The statements of a defendant in open court are presumed to be true. See United States v. Gonzalez–Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). Thus, "[o]nly in the most extraordinary circumstances" will an evidentiary hearing be required to dispose of the later contention that statements made during the change of plea were untruthful." Blackledge, 431 U.S. at 80 n.19.

Walker's claims largely rely upon conclusory allegations that are refuted by the undisputed record evidence in this case. Walker has not stated any of his claims in a sufficiently specific manner to be granted relief, and this is an independent basis for the denial of his claims. Moreover, the evidence already of record entirely refutes Walker's claims. Furthermore, even if Walker's statements in his pleadings were true, he is not entitled to relief. Thus, the Court need not hold an evidentiary hearing on his motion. Additionally, for the specific reasons set forth below, the Court denies Walker's motions.

The Court has reviewed the entirety of Walker's pleadings and construed his Section 2255 Motions liberally. In these pleadings, Walker makes far-reaching but unavailing claims. Walker essentially offers three lines or argument: (1) that Walker's guilty plea was not intelligent because Mr. Hughes had promised Walker that he would receive a sentence of only 130 months, (doc. 61, p. 2); (2) that Mr. Hughes committed ineffective assistance of counsel by not presenting evidence that Walker robbed the store in order to collect on a large debt that Mr. Livingston and Mr. Harris owed to Walker for drugs that Walker supplied to them, (id. at pp. 1—3); and (3) that the Court should reduce his sentence because the robbery was motivated by his attempt to collect on a drug debt, (id. at p. 3).[2] The Court explains below why each of these arguments are unavailing.

---

[2]  In his Motion for a Supersedeas Bond, (doc. Pp. 6—8), Walker makes arguments regarding his PSR's description of his criminal history. Walker has not stated whether he offers these arguments in support of

I. **THE COURT REJECTS WALKER'S CLAIM THAT MR. HUGHES RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY PROMISING WALKER A LESSER SENTENCE.**

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001). A defendant's guilty plea, appeal waiver, or collateral attack waiver does not preclude an ineffective assistance of counsel claim premised on an involuntary and unintelligent plea. United States v. Puentes–Hurtado, 794 F.3d 1278, 1281, 1285 (11th Cir. 2005).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686. A convicted defendant must meet two components to establish that counsel's assistance was so defective as to require reversal of a conviction or sentence: (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a

---

his Section 2255 Motion, much less explained how these arguments would support setting aside or modifying his conviction or sentence. To the extent Walker does offer them in support of his Section 2255 Motion, the Court rejects them for several reasons. First, Walker's arguments are conclusory and without sufficient factual or legal support. Additionally, Walker waived these arguments through his plea agreement's collateral attack waiver and his failure to raise these arguments on appeal. Further, when the Court specifically asked Walker if he had any objections to or disagreement with his PSR at his sentencing hearing, he stated that he did not. Moreover, even construing Walker's arguments liberally, nothing he offers would have affected the Court's sentence in this case. Furthermore, to the extent Walker offers arguments in support of a claim of ineffective assistance of counsel, it was not deficient for Mr. Hughes not to raise the arguments regarding Walker's criminal history in response to the PSR because the arguments entirely lack credibility and are factually and legally incorrect. Even if Mr. Hughes committed any ineffective assistance by failing to raise these arguments, Walker suffered no prejudice as they would have had no effect on his sentence. Moreover, Walker cannot attack his prior state convictions and sentences through a federal proceeding including at his federal sentencing hearing and this Section 2255 action. See Senter v. United States, 983 F.3d 1289, 1292—93 (11th Cir. 2020)(discussing "the broad parameters of the prohibition against attacking state court convictions through federal proceedings")(citing Custis v. United States, 511 U.S. 485, 487 (1994)).

result of that deficient performance. <u>Id.</u> at 685–86. "If a petitioner cannot satisfy one prong, we need not review the other prong." <u>Duhart v. United States</u>, 556 F. App'x 897, 898 (11th Cir. 2014). Thus, if a defendant cannot show prejudice, the Court need not determine whether defendant's allegations show his counsel's performance fell below an objective standard of reasonableness.

The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." <u>Hill</u>, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. <u>Davis v. United States</u>, 404 F. App'x 336, 337 (11th Cir. 2010) (citing <u>Strickland</u>, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" <u>LeCroy v. United States</u>, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004) (second alteration in original)). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland</u>, 466 U.S. at 690. Further, retrospective judicial scrutiny of counsel's performance "must be highly deferential" and must "eliminate the distorting effects of hindsight." <u>Id.</u> at 689. "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" <u>LeCroy</u>, 739 F.3d at 1312 (quoting <u>Strickland</u>, 466 U.S. at 690). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant could obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92.  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  LeCroy, 739 F.3d at 1312 (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

### A.   Walker's Claims of Ineffective Assistance of Counsel Based on a Promise of a Sentence are Barred by His Voluntary, Intelligent, and Knowing Guilty Plea.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A Section 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional that defendant could not raise double jeopardy claim on collateral attack following guilty plea).  Pertinently, a "knowing and voluntary guilty plea waives all non–jurisdictional, pre–plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea."  Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam).

The "careful and detailed" procedure the Court employed at the Rule 11 hearing entirely refutes Walker's arguments that Mr. Hughes rendered ineffective assistance of counsel prior to the

guilty plea including his claim that Mr. Hughes promised him a specific sentence.  During the change of plea hearing, the Court had Walker placed under oath and engaged in an extensive colloquy that lasted approximately forty minutes.  (Doc. 33.)  As part of that colloquy, the Court reviewed Walker's plea agreement with him and had him certify his signature on the plea agreement.  Walker stated that he had reviewed the plea agreement with Mr. Hughes, that he understood what the plea agreement said, and that he understood that by signing the plea agreement and presenting it to the Court he was agreeing to be bound by all its terms and agreeing that all the facts contained in the agreement were true and accurate.   In Walker's plea agreement, he agreed to the factual basis of Count One, and he testified at his change of plea hearing that he agreed with the specific facts set forth in the agreement.  (Doc. 35, pp. 1—2.)  The plea agreement explained the possible penalties Walker faced due to his plea including a sentence of up to twenty years' imprisonment.  (Id. at p. 2.)  Walker further agreed that,

> No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range. The Court is not bound by any estimate of sentence given by Defendant's counsel, the government, the U.S. Probation Office, or anyone else. The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw his plea of guilty if he receives a more severe sentence than he expects.

(Id. pp. 2—3.)  The Plea Agreement stated that the "the Court is not required to impose a sentence with the range [the Sentencing Guidelines] suggest."  (Id. at p. 3.)  The agreement also explained Walker's rights including his rights to trial.  (Id. at p. 8.)  Pertinently, through the Plea Agreement, Walker relayed to the Court his complete satisfaction with Mr. Hughes' representation and confirmed that he had rendered faithful, skillful, and diligent assistance.  (Id. at p. 9.)

Particularly given Walker's sworn statements during his Rule 11 hearing, he cannot credibly argue that his guilty plea was involuntary, unknowing, or unintelligent.  Stitzer, 785 F.2d at 1514 n.4.  During the plea hearing, the Court went to great lengths to make certain that Walker's

guilty plea was a product of his own free choice and made with full knowledge of the consequences of that plea. He stated that no one had made or forced him to plead guilty or threatened, pressured, forced, or intimidated, him or someone close to him to get him to plead guilty, and no one had leaned on him, bribed, him, or promised him anything to induce his guilty plea. Walker testified that his decision to plead guilty was voluntary, of his own free will, and knowing and that he was pleading guilty because he was in fact guilty of the charge against him. The Court carefully observed and questioned Walker at length and found Walker competent and able to make important decisions, and Walker agreed with that assessment. Throughout the plea hearing, Walker was able to converse with the Court, recount personal information, and respond to all the Court's questions, and he repeatedly stated that he understood everything that the Court had said and done during the hearing and that he had no questions of the Court or his counsel. Among other things, the Court apprised Walker of the rights he would waive if he pleaded guilty, the elements of the crimes with which he was charged, the maximum potential penalties and other consequences he faced if he pleaded guilty. He testified throughout the hearing that he understood the Court's explanations.

Walker also testified that he had the assistance of counsel, and that nothing about Mr. Hughes' representation was influencing his decision to plead guilty. He affirmed that his attorney had met with him sufficiently and discussed the case with him including the discovery against him and his rights, that he was satisfied with his attorney's advice and assistance.

The Court also explained to Walker the penalties associated with the charge to which he was pleading guilty, and Walker stated that he understood. Importantly, the Court explained that no one could predict his sentence, that all anyone could give him regarding his sentence was an estimate or best guess and that estimate would in no way be binding on the Court. Walker testified that no one had made any promises or guarantees to him regarding what sentence he would receive.

The Court told Walker that if he pleaded guilty, the Court could sentence him to the maximum extent allowed by law just as if he had gone to trial and been found guilty of the charge he was pleading guilty to and that if he received a sentence more harsh than the sentence he thought he was going to get, that would not be grounds for withdrawing his guilty plea.

Based on his sworn statements, the Court concluded that Walker knowingly and intelligently participated in the hearing and that his offer to plead guilty was voluntarily, knowingly, and intelligently made, and Walker agreed with that assessment.  Walker did not indicate in any way that he did not understand the proceedings or the decision he was making.  At no point did Walker indicate that he did not understand the wrongfulness of his actions or that his attorney had failed to fully investigate any issue.  He stated that the was not relying upon any promises in deciding to plead guilty.  Given this extensive colloquy and Walker's sworn declarations, Walker cannot now be heard to argue that his plea was unknowing or involuntary. Blackledge, 431 U.S. at 73–74.

The Court must rely upon the truthfulness of Walker's prior sworn statements when ruling on his Section 2255 Motion.  He cannot now come into this Court and argue in direct contradiction to this testimony.  Moreover, even if Mr. Hughes had misadvised Walker of his sentencing prospects or his rights prior to the Rule 11 hearing, the Court's careful and detailed procedure during the Rule 11 hearing including the explanation of rights and sentencing procedure would have dissuaded him of those notions and cured any defective advice.  Again, the Court repeatedly told Walker that no one could predict his sentence, that he could be sentenced to the maximum extent allowed by law, that the Court could sentence him above the Guidelines range, and that it was solely up to the Court to decide what sentence he would receive if he pleaded guilty.  Walker repeatedly stated under oath that he understood.  It is patently absurd for Walker to now seek to

shirk his solemn declarations in his Rule 11 hearing and his plea agreement.  Given the careful and detailed procedure employed by the Court, Walker's knowing, voluntary, and intelligent plea bars his claims that Mr. Hughes rendered ineffective assistance prior to the entry of his guilty plea.  See Cruz v. United States, 188 F. App'x 908, 914 (11th Cir. 2006) (affirming dismissal of ineffective assistance claim where movant claimed counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing given the court's thorough explanation at plea hearing); United States v. Miley, 119 F. App'x 330, 332 (2d Cir. 2005) (holding that any prejudice from defense counsel's alleged misrepresentations was dispelled by the time movant pleaded guilty and acknowledged that no promises had, in fact, been made to him outside of the plea agreement).Thus, the Court finds that Walker's guilty plea was voluntary, knowing, intelligent, and counseled and that it forecloses his claims that Mr. Hughes rendered ineffective assistance of counsel prior to the guilty plea including his claim that he only pleaded guilty because Mr. Hughes promised him that he would receive a sentence of 130 months' imprisonment.  Therefore, the Court **DENIES** this portion of Walker's Section 2255 Motion.

> **B.** **Walker's Claim that Mr. Hughes Rendered Ineffective Assistance of Counsel by Promising Walker a Sentence prior to His Guilty Plea Fails on the Merits.**

Even if Walker's guilty plea did not bar his pre-plea claims of ineffective assistance of counsel, he has failed to demonstrate: (1) that Mr. Hughes' performance was deficient, i.e., the performance fell below an objective standard of reasonableness; or (2) that Walker suffered prejudice because of that deficient performance.  A Section 2255 movant asserting an ineffective assistance of counsel claim in the guilty plea process must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that the deficient performance "affected the outcome of the plea process."  Hill, 474 U.S. at 59.  In other words, to establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would .

15

. . have pleaded [not] guilty and would . . . have insisted on going to trial." Id.; see also Slicker v. Wainwright, 809 F.2d 768 (11th Cir. 1987) (to be entitled to an evidentiary hearing on whether petitioner's lawyer incorrectly advised petitioner that the negotiated plea agreement provided that he would serve less time than the maximum penalty, petitioner was required to establish that he would not have pleaded nolo contendere and would have insisted on going to trial had his lawyer not misled him with faulty information).

Further, a mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors, although required, is insufficient to establish prejudice. Rather, "the court must look to the totality of the objective factual circumstances surrounding the plea in order to determine whether there is a reasonable probability that the [movant] would in fact have insisted on trial." Suarez v. United States, No. 15–CR–20144, 2017 WL 3208725, at *5 (S.D. Fla. June 19, 2017), *report and recommendation adopted*, No. 16–24003–CIV, 2017 WL 3206328 (S.D. Fla. July 27, 2017) (citing Hill, 474 U.S. at 59; Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010)). This inquiry will often include an assessment of the strength of the prosecution's case, any available defenses the movant could have asserted at trial, the plea colloquy, and the movant's potential sentencing exposure. Id.

Walker contends that Mr. Hughes advised him that he would only be facing a sentence of 130 months' imprisonment if he pleaded guilty. However, as set forth above, Walker's plea agreement and his sworn testimony before this Court entirely refutes this claim. Walker cannot now come into Court and make a claim that is directly inapposite to his sworn testimony at the Rule 11 hearing and the representations he made in his plea agreement. Consequently, the Court rejects Walker's contention that Mr. Hughes promised him a sentence of 130 months' imprisonment. Additionally, to the extent that Walker claims that Mr. Hughes rendered ineffective

assistance by advising Walker to plead guilty, the Court finds that Walker has failed to prove that such advice was objectively unreasonable.  Given the mountain of evidence against Walker it would not have been ineffective for Mr. Hughes to advise Walker of his dismal prospects of succeeding at trial.  United States v. Hall, No. CIV.A. 09–00319, 2011 WL 4101504, at *3 (S.D. Ala. Sept. 13, 2011) (rejecting 2255 movant's conclusory claim that counsel rendered ineffective assistance by advising him that he had "no chance of winning" at trial because, among other reasons, movant failed to demonstrate that advice was erroneous); see also Doyle v. Jones, 452 Fed. App'x 836, 841–42 (10th Cir. 2011) (defendant failed to demonstrate counsel was ineffective for giving an unrealistic assessment of the case where defendant failed to demonstrate either that counsel misadvised him on the relative merits of his options, or that counsel's performance was professionally unreasonable); Dickison v. Jones, No. 3:13CV590/LC/CJK, 2016 WL 908864, at *6 (N.D. Fla. Feb. 8, 2016) (to state a legally sufficient claim on grounds for advice on chances of success at trial, movant must prove some specific deficiency such as counsel's assessment was unreasonable under the circumstances or that counsel had not investigated or otherwise was not familiar with the case), *report and recommendation adopted*, 2016 WL 901686 (N.D. Fla. Mar. 9, 2016).

Moreover, Walker has failed to show any prejudice from Mr. Hughes' advice prior to his guilty plea.  Walker does not deny that the prosecution had more than ample evidence to prove that he committed the robbery alleged in Count One of the Indictment.  Moreover, the facts of this case set forth in the Presentence Investigation Report are quite damning.  (Doc. 39, ¶¶ 4—7.) Even Walker's own family identified him as the thief that shot Mr. Livingston as depicted on the store's security footage, and his DNA was found on the gun at the scene.  (Id.)  Indeed, he still admits his guilt in his Section 2255 Motion.  (Doc. 61, p. 3.)  Further, through the Plea Agreement, the

Government agreed, among things, to dismiss the remaining counts against Walker.  If Walker had gone to trial, he undoubtedly would have been convicted of Count Two of the Indictment which would have subjected him to an addition ten years' imprisonment, consecutive to his sentence on Count One.  See 18 U.S.C. § 924(c).  Thus, he reduced his sentencing exposure by ten years (one-third of his sentencing exposure) through his guilty plea.  In sum, the Government would have presented the jury with significant evidence of Walker's guilt had he gone to trial, and a trial would have resulted in a substantially higher sentence.  Consequently, having reviewed the totality of the objective factual circumstances surrounding Walker's plea, the Court determines that there is not a reasonable probability that an objective defendant in Walker's position would have insisted on trial.  As such, Walker has failed to show that Mr. Hughes' advice prior to his guilty plea caused him any prejudice.

For these additional reasons, the Court **DENIES** Walker's arguments that Hughes rendered ineffective assistance prior to his guilty plea.

## II.   THE COURT REJECTS WALKER'S CLAIMS THAT MR. HUGHES RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT PURSUING WALKER'S STRATEGY OF BLAMING HIS VICTIMS.

In his attempt to escape the consequences of his own actions, Walker slanders his victims by claiming that they were drug addicts, he was their drug dealer, and that the robbery was simply his botched attempt to collect on a debt the victims owed him.  He faults Mr. Hughes for failing to pursue this strategy before the Court.  Walker claims that he told Mr. Hughes that he

> needed to address the court to enter testimony evidence in favor of my defense that related to me & the owner of the repair shop as well as the alleged victim exchanging finances for drugs.  That was <u>not</u> me just walking into a random business demanding money while armed from the alleged victim who credited drugs from me for himself and the owner of the store, due to a [sic] argument i [sic] was told that i [sic] would not be paid and i [sic] did take criminal actions to get the funds that they owed be but it was not me randomly robbing some innocent, hard working, tax paying citizen. . . .  I would <u>never</u> prey on an innocent hardworking

person.   The only reason i [sic] engaged the alleged victim is because he had credited drugs from me & tried <u>not</u> to pay me what he owed.  I never had intentions of hurting the alleged victim, he was so stubborn towards paying me what he owed me that he was willing to attack me & the gun went off, he had already used the crack cocaine & pain pills i had given him & they complained about the product being cut (weaker than the usual) and wanted more without paying.  I told him that was impossible because i had to pay my supplier & that is where all my trouble started.  Had my attorney collected the phone records i told him about i could've how this honorable court at a trial that the alleged victim was <u>not</u> a innocent victim of a robbery and that he was <u>not</u> fighting for his life because i <u>never</u> attacked him he was a drug addict who didn't want to pay what he had gotten from me on credit, dueto my attorneys [sic] ineffective assistance as well as perjuring his oath to [sic] office & violating his ethics, i was made to look like a gross citizen who just mindlessly attacked a random car repair person and this was <u>not</u> the case.

(Doc. 61, pp. 1—3.) This Court has seen some desperate and nonsensical arguments, but this line of argument by Walker ranks as one of the most despicable arguments the Court has encountered. It apparently was not enough for Walker to cause the physical and emotional injuries to his victims that they compellingly detailed at the sentencing hearing.  Rather, Walker decided to add insult to injury and to slander the good name of his victims.  Regardless, his claims are unavailing for a multitude of reasons.

At the very least, it was objectively reasonable for Hughes not to pursue Walker's version of events and his strategy of victim blaming at any stage of the case, including sentencing, because the undisputed evidence entirely thwarts Walker's version of events.  Walker contends, that he "never had intentions of hurting the alleged victim" and that he "never attacked [Mr. Livingston]." (<u>Id.</u> at pp. 2, 3.) This is a lie.  As the Eleventh Circuit explained, the surveillance video of Walker's crime demonstrates that Walker rushed into the garage of the tire shop and ambushed Mr. Livingston.  (Doc. 58, p. 5.)  The Court reviewed the surveillance video twice at sentencing and has repeatedly reviewed it again to rule on Walker's Section 2255 Motion.  At the very beginning of the video, Mr. Livingston was sweeping the garage of the shop directly adjacent to the parking lot.  Walker suddenly burst into the video frame with a t-shirt over his head and his gun pointed

directly at Mr. Livingston's head, and Walker rushed directly at Mr. Livingston.  Mr. Livingston was clearly frightened, and he took a defensive posture.  Within seconds, Walker forcefully pushed Mr. Livingston onto the garage floor while keeping his gun trained on Mr. Livingston's head. Thus, Walker clearly "attacked" Mr. Livingston and he intended to hurt him.  Walker then forced Mr. Livingston into the shop's office with his gun still aimed at Mr. Livingston's head and neck. Mr. Livingston was still noticeably frightened as he retrieved a bank envelope and cash from the office's file cabinet and attempted to hand it to Walker.  The bank envelope dropped to the floor, and Walker shot Mr. Livingston at approximately the thirty-five second (:35) mark of the video. As Mr. Livingston fell to the floor, the two men began to struggle with Mr. Livingston clearly in a defensive posture.  Walker and Mr. Livingston were partially out of sight of the camera for approximately twenty seconds after the bank envelope dropped to the floor, but the video shows that Walker was on top of Mr. Livingston and Walker struck Mr. Livingston repeatedly with overhand blows with his hand that still held the gun while Mr. Livingston took defense actions. As the two men emerged struggling from the office floor, the t-shirt was no longer on Walker's face.  Mr. Livingston wrapped his arms around Walker from behind and attempted to push Walker out of the office getting all the way to the office door, but Walker resisted and was able to force his way back into the office.  As the Eleventh Circuit detailed, and the Court noted at sentencing, during the continued struggle where Walker resisted Mr. Livingston's efforts to push him out of the office, Walker loaded the magazine into the firearm and prepared to fire it again.  (Id.)  At approximately the one-minute-and-twenty-second (1:20) mark of the video, Walker had loaded the magazine, and he pointed the gun at Mr. Livingston's abdomen attempting to shoot him again. (Id.)  Thankfully, at that moment, Mr. Livingston was able to twist Walker around and bring him down to the floor.  The men once again went to the floor, with Mr. Livingston still in a defensive

posture.  In the ensuing struggle, Mr. Livingston was able to gain the physical advantage and cause Walker to drop the firearm.  Mr. Livingston's arms remained wrapped around Walker from behind, and he was able to force Walker out of the office, through the garage, and through the parking lot where he eventually (and graciously) released Walker.  Given this indisputable video evidence, it is simply not credible for Walker to claim that he did not attack Mr. Livingston and that he did not attempt to hurt him.

Additionally, Walker contends that Mr. Livingston "was so stubborn towards paying me what he owed me that he was willing to attack me."  (Doc. 61, p. 2.)  Once again, this is a lie.  As the Eleventh Circuit detailed, the video shows that it was Walker that attacked Mr. Livingston and that Mr. Livingston was not "stubborn" in the face of Walker's felonious demands.  Rather, Mr. Livingston "attempted to pass Walker a handful of bound bills and a bank bag, all while Walker had the gun pointed at his head or neck."  (Doc. 52, p. 5.)  Mr. Livingston only engaged in a physical struggle with Walker after the bank bag fell to the floor and Washington shot Mr. Livingston.  (Id.)  Moreover, the entirety of the video conclusively refutes Walker's claim that he simply approached Mr. Livingston seeking payment for a drug debt and that the situation only escalated when Mr. Livingston refused payment.  Walker did not calmly enter the store and make a request that Mr. Livingston pay up.  Rather, as the video clearly shows, Walker ambushed Mr. Livingston by rushing at him with a gun drawn at Mr. Livingston's head.  Walker physically attacked Mr. Livingston and pushed him to the ground, and Mr. Livingston immediately complied with Walker's demands.   Even after Walker shot Mr. Livingston, he did not flee the office, but instead he struck Mr. Livingston repeatedly and forced his way back into the office while he loaded the firearm and attempted to shoot Mr. Livingston again.  Furthermore, the video demonstrates that Walker attempted to hide his identity at the beginning of the robbery by wrapping a t-shirt

over his head as a mask.  If Walker was attempting to collect on a debt that Mr. Livingston supposedly owed Walker, why would Walker obscure his identity from Mr. Livingston?

Moreover, Walker's statements before this Court, including the factual basis in his plea agreement, his sworn statement at his Rule 11 hearing that he agreed with that factual basis, his explicit agreement with his PSR at his sentencing hearing including his statement that "everything is good," and his statements of remorse during his allocution, all entirely refute his recently concocted version of events.  Furthermore, the Court heard from Mr. Livingston and Mr. Harris at sentencing.  The Court found these two gentlemen to be extremely credible, and their descriptions of the incident and their lives entirely refute Walker's attempts to slander them.  Put simply, Walker's version of events is mere rubbish.  Even if he had relayed his meritless theory to Mr. Hughes (which the Court doubts), Mr. Hughes was under no obligation to pursue it.  Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir.1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit").

Further, it is not clear if Walker claims that Mr. Hughes should have deployed his victim-blaming strategy to avoid a conviction on the charges against him or simply to seek a decreased sentence.  However, to the extent that Walker claims that Mr. Hughes should have deployed this strategy prior to his guilty plea or that Hughes should have counseled Walker against pleading guilty in order to pursue this strategy at trial, for the reasons set forth in Section IA above, Walker's knowing, voluntary, and intelligent guilty plea bars this claim.

Moreover, it was entirely reasonable and by no means ineffective for Mr. Hughes to not deploy Walker's victim blaming strategy during the plea-bargaining process, at trial, or at sentencing.  Even if Mr. Hughes had raised Walker's version of events and it was found to be true (which, as explained above, it would not have been), Mr. Hughes would have simply implicated

Walker in even more crimes by demonstrating that Walker is a drug dealer in addition to being a violent thief.  Thus, the Government would have likely filed a Superseding Indictment against Walker that added Counts for distribution of controlled substances and thereby increased his sentencing exposure.  Alternatively, if Mr. Hughes had raised Walker's version of events and it was found to be false (which it would have been), the Government would have likely seen it as further offense to Walker's victims and refused to offer him the favorable plea bargain he received. Likewise, it would have been foolish for Mr. Hughes to raise Mr. Walker's concocted version of events at sentencing.  The Court would have found the attempt to blame the victims a shameful attempt to dodge responsibility and it would have negated any benefit Walker received from accepting responsibility for his crime.  Moreover, even if the Court found Walker's version of events to be credible, it would not have resulted in a lower sentence.  Rather, the Court would have found that Mr. Walker was engaged in even more criminal activity by dealing drugs and that, therefore, he should receive a stiffer sentence.  Pursuing this strategy at sentencing would have been akin to asking a judge not to punish a defendant too severely for speeding because he was simply fleeing the scene of his robbery of a bank.  Thus, it was certainly objectively reasonable for Hughes not to pursue Walker's version of events as a defense to the charges against Walker at any stage of this case.  Indeed, it would have been unreasonable for Mr. Hughes to offer an argument that only served to implicate his client in more crimes than he was already accused of committing.

Moreover, Walker suffered no prejudice from any decision to not raise Walker's victim-blaming strategy prior to trial, during a trial, or at sentencing.  Even if Walker's version of events was factually plausible (which, again, it is not) it would not absolve Walker of criminal liability. He would still be unquestionably guilty of each of the elements of Count One even under his

version of events.  Indeed, it appears that Walker understands that his version of events would not prevent his conviction as he states that he "did take criminal actions" and he only seeks a reduced sentence.  (Doc. 61.)  Thus, not raising Walker's version of events did not disadvantage him during the plea bargaining process (indeed, it benefited him to not to raise this strategy) and it would have only prejudiced him to raise this version of events during a putative trial.  Moreover, for the reasons discussed above, given the mountain of evidence implicating Walker and the substantial benefit he received from his plea agreement, an objective defendant in Walker's position would have pleaded guilty regardless of Mr. Hughes' assistance on this issue.  Furthermore, failing to raise this version of events did not cause any prejudice to Walker during the sentencing hearing.  Had Mr. Hughes pursued this line of argument, the Court would have taken it as an affront to Walker's victims, an attempt to dodge responsibility for Walker's wrongdoing, and/or evidence that Walker was involved in even more criminal activities.  Thus, the Court would have still sentenced Walker to the statutory maximum.

For all these reasons, the Court rejects Walker's argument that Mr. Hughes rendered ineffective assistance of counsel by not pursuing Walker's proposed strategy of blaming Walker's victims, and the Court **DENIES** this portion of Walker's Motion.

### III.   THE COURT REJECTS WALKER'S REQUEST FOR A LOWER SENTENCE.

Walker requests that the Court lower his sentence because his robbery was an attempt to collect on a drug debt and not an attack on an innocent victim.  (Doc. 61, p. 3.)  As indicated above, the Court finds this request offensive and unavailing.  The Court need not rehash the points made above in Section III.C., but the Court reiterates that Walker's newly concocted version of events is entirely fictional.  Even if Walker's tale was true, it would not in any way diminish the seriousness of Walker's crime or otherwise warrant a lower sentence.  Furthermore, to the extent

Walker makes this claim independently of his claims of ineffective assistance of counsel, a number or factors bar the Court from considering it.[3]

### A. Walker's Plea Agreement's Collateral Attack Waiver Bars any Claim that Does not Sound in Ineffective Assistance of Counsel.

Walker's plea agreement contained a collateral attack waiver that stated, "Defendant entirely waivers his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion.  The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel."  (Doc. 35, p. 7.)  It is well–settled that a waiver of appeal[4] and collateral attack provisions contained in a plea agreement are enforceable if the waivers are knowing and voluntary.  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)).  "'To establish the waiver's validity, the government must show *either* that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver.'"  United States v. Mottola, 394 F. App'x 567, 568 (11th Cir. 2010) (quoting United States v. Benitez–Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997)).  "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error."  United

---

[3] As the Magistrate Judge correctly explained when providing Walker with his Castro notification, "Federal Rule of Criminal Procedure 35 and 18 U.S.C. § 3582(c) identify extremely limited circumstances where such a modification is available, and none appear applicable here."  (Doc. 65, p. 2.)  Thus, to the extent Walker seeks to rely upon Rule 35, Section 3582(c), or any authority other than Section 2255 for his sentencing reduction, the Court **DENIES** that request.

[4] "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence.  United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993).  Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.  Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999).  "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous."  Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007).

The Court conducted an extensive colloquy with Walker that unquestionably established that he was pleading guilty knowingly and voluntarily and with the close assistance of counsel. The Court reviewed his plea agreement with him even having him certify his signature and initials and having the AUSA summarize the agreement and Walker confirm the accuracy of that summary.  Walker stated that he was confident that he understood what his plea agreement said and what it means.  Moreover, the Court took pains to explain the plea agreement's collateral attack waiver to Walker and he stated that he understood the waiver and that he wanted to waive his collateral attack rights with one limited exception as part of his plea bargain with the United States.

When a defendant enters a guilty plea during a Rule 11 proceeding, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  Gonzalez–Mercado, 808 F.2d at 800 n.8.  Moreover, it "manifestly clear" from the record, including the extensive plea colloquy, the plea agreement itself, and the post–conviction consultation certification, that Walker fully understood the significance of his plea agreement's collateral attack waiver.  Looking at the entirety of the record and taking Walker at his word during his Rule 11 hearing, he fully understood that he waived his collateral attack rights through his plea agreement as part of his plea bargain with the United States.

As Walker's collateral attack waiver was undoubtedly valid, the Court turns to the question of whether the waiver covers Walker's claim that the Court should reduce his sentence.  The only exception to Walker's collateral attack waiver is for claims of ineffective assistance of counsel.

Thus, his collateral attack waiver does not bar the claims discussed in Sections I and II above. However, to the extent that he is arguing directly that the Court should reduce his sentence not based on Mr. Hughes' alleged deficiencies because of the "facts" Walker details in his Motion, that claim does not sound in ineffective assistance of counsel. Accordingly, these arguments are barred by his collateral attack waiver, and the Court **DENIES** this portion of his Section 2255 Motion.

### B.     The Court will Not Consider Issues Already Decided on Appeal.

A district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014) (citing United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000)). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255, unless there has been an intervening change in the law. Nyhuis, 211 F.3d at 1343; Davis v. United States, 417 U.S. 333, 342 (1974). As the Seventh Circuit Court of Appeals has noted, "[W]e do not see how a federal prisoner—who must file his motion for relief under 2255 in the very court that convicted him—can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004).

Walker, through appellate counsel, argued that his above-Guidelines sentence was procedurally improper and substantively unreasonable on direct appeal. The Eleventh Circuit rejected those arguments and affirmed Walker's sentence. (Doc. 58.) Thus, he cannot now argue that his sentence was too harsh through his Section 2255 Motion.

### C.      Walker Procedurally Defaulted any Claim not Raised on Direct Appeal.

In the Eleventh Circuit, under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." <u>McKay v. United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011) (internal citation and punctuation omitted).  The procedural default rule "'is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'"  <u>Id.</u> (quoting <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003)).

A showing of "cause and prejudice" can overcome a defendant's default.  <u>Id.</u>[5]  More specifically, a defendant can overcome "application of the procedural default bar by show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." <u>Id.</u> (citing <u>Lynn v. United States</u>, 365 F.3d 1225, 1234 (11th Cir.2004) (alteration in original)).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented him or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  <u>Lynn</u>, 365 F.3d at 1235.

To be certain, a meritorious claim of ineffective assistance of counsel can constitute cause to excuse a procedural default.  <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000). However, a defendant does not clear the procedural default hurdle merely by invoking the phrase "ineffective assistance" or making conclusory allegations about counsel's performance.  As the Eleventh Circuit has explained:

---

[5] "Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself."  <u>McKay</u>, 657 F.3d at 1196 (citing <u>Dretke v. Haley</u>, 541 U.S. 386, 388 (2004)).  However, even if the actual innocence exception could apply to Walker's claims, he has failed to plausibly allege that he was actually innocent of Count One under any standard. The record, including his own admissions, indisputably establishes his guilt.

In order to [excuse procedural default], however, the claim of ineffective assistance must have merit.  [Greene v. United States, 880 F.2d 1299, 1305(11th Cir. 1989).]  To determine whether it does, we must decide whether the arguments the defendant alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal.  Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988).  Appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit."  Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984).

Id.

As discussed above at length, Walker does not raise a meritorious claim of ineffective assistance of counsel.  At the very least, it was reasonable for Mr. Hughes to assess that a strategy based on Walker's version of events would have been without merit.  Further, Walker has failed to show that any arguments Mr. Hughes supposedly should have made would have affected the outcome of this case.  In short, Walker has failed to demonstrate the "cause and prejudice" necessary to excuse his procedural default.  Thus, to the extent that Walker could claim that his arguments for a lower sentence differ from those raised on direct appeal, he is procedurally defaulted from bringing such claims via Section 2255.

## IV.   WALKER IS NOT ENTITLED TO LEAVE TO APPEAL *IN FORMA PAUPERIS* OR A CERTIFICATE OF APPEALABILITY.

The Court also denies Walker leave to appeal *in forma pauperis* and a Certificate of Appealability.  Though Walker has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); see also Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when she seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Walker, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller–El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This

threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Miller–El</u>, 537 U.S. at 336.

Based on the above analysis of Walker' pleadings and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal. Therefore, the Court **DENIES** the issuance of a Certificate of Appealability. Walker is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non–frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court likewise **DENIES** Walker *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Walker's request to set aside his conviction and sentence, (doc. 61), and **DENIES** as **MOOT** his Motion for Supersedeas Bond, (doc. 76). Therefore, the Court **DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case. Further, the Court **DENIES** Walker a Certificate of Appealability and *in forma pauperis* status on appeal.

The Court provides further comment regarding the strategy Walker employed in his attempt to set aside his conviction and sentence. The Court heard from Mr. Livingston and Mr. Harris at the sentencing hearing, and they each presented compelling testimony regarding their admirable efforts to overcome difficult circumstances. Mr. Livingston testified to his military service, his attempts to provide for his family by working two jobs, and his family's efforts to overcome the psychological trauma that Walker caused them. Mr. Harris detailed his journey of building a successful business from humble beginnings including a period of homelessness.

Rather than taking inspiration from these men's stories or considering them as models for success in his own life, Walker has once again victimized these men by grossly disparaging them and blaming them for his own abhorrent conduct.  De'von Le'edward Walker should be ashamed.

   **SO ORDERED**, this 27th day of May, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA